UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN FRANCES ALLEN,<br><br>Petitioner,<br><br>v.<br><br>KIMBERLY HUGHES, Warden,<br><br>Respondent. | No. 2:16-cv-0560-GEB-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel in this petition for writ of habeas corpus under 28 U.S.C. § 2254.  Respondent moves to dismiss the petition as untimely.  ECF No. 11.  For the reasons that follow, the motion must be granted.

**I.     Background**

On December 27, 1982, petitioner was convicted of first-degree murder with special circumstances, three counts of attempted murder with use of a firearm, unlawful use of a controlled substance, possession of controlled substance paraphernalia, possession of brass knuckles, possession of placidyls, possession of heroin, possession of cocaine, and resisting an executive officer with use of a firearm.  ECF No. 13, Notice of Lodging Documents in Paper, Lodged Document (hereinafter "Lodg. Doc.") Nos. 1, 2.  The trial court sentenced her to life imprisonment without the possibility of parole and a consecutive sentence of sixteen years and

/////

four months. *Id.* On her direct appeal, the California Court of Appeals provided this factual summary of the case:

> On March 25, 1982, four members of the Metropolitan Narcotics Task Force in Stockton approached a residence in an attempt to execute a search warrant for controlled substances. A confidential informant had provided information that a resident of the house, Reynaldo Black, had heroin in his possession. Members of the task force had followed Black earlier in the day, monitoring his activities. The officers were unaware of anyone other than Black residing in the house.
>
> Prior to executing the warrant, three of the four officers donned bulletproof vests, blue jackets with the word "Police" prominently printed in two locations, and their badges on the front of the jackets. The victim, Deputy Sheriff Michael Coleman, had forgotten to bring his vest and blue jacket, and as a result, was ordered to remain in the rear. Aside from the blue jackets, the officers were dressed in street clothes. Three had beards; Coleman had long hair.
>
> In the process of executing the warrant, the officers were confronted by the defendant, armed with an automatic handgun; as they entered the house, she commenced firing, instantly killing Officer Coleman; the officers returned the fire, inflicting three wounds on defendant, none of which were life threatening.
>
> The search warrant was then executed and produced cocaine and placidyls found in defendant's saddlebags, heroin and heroin paraphernalia in various places throughout the house, and brass knuckles found in the garage. Other evidence was found indicating defendant was also resident of the house. Medical tests showed she had injected heroin on the day of the shooting, although she was alert when taken to the hospital.

Lodg. Doc. No. 2. The appellate court affirmed the convictions on February 25, 1985, and petitioner opted not to seek further direct review in the California Supreme Court.

After a more-than-30-year silence, petitioner began a round of habeas petitions in the California state courts. Her first petition, filed on July 6, 2015 in the San Joaquin County Superior Court, was denied as untimely on July 29, 2015. Lodg. Doc. Nos. 3, 4. The second petition, filed in the California Court of Appeal on September 4, 2015, was denied on September 18, 2015. Lodg. Doc. Nos. 5, 6. The final petition, filed on October 9, 2015 in the California Supreme Court, was denied on February 3, 2016. Lodg. Doc. Nos. 7, 8. Petitioner filed this action on February 28, 2016. ECF No. 1.

**II.     The Limitations Period**

Under the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), a one-year limitations period for seeking federal habeas relief begins to run from the latest of: (1) the date the

judgment became final on direct review or the expiration of the time for seeking such review (or April 25, 1996, if the judgment became final prior to AEDPA's enactment), (2) the date on which a state-created impediment to filing is removed, (3) the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review, or (4) the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D); *Malcom v. Payne*, 281 F.3d 951, 955 (9th Cir. 2002).

### A. Statutory Tolling

No statute tolls the limitations period "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed . . . ." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). However, if a petitioner properly files a state post-conviction application prior to the expiration of the limitations period, the period is tolled and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). In California, a properly filed post-conviction application is "pending" during the intervals between a lower court decision and the filing of a new petition in a higher court if the second petition was filed within a "reasonable time" after the denial of the first. *Carey v. Saffold*, 536 U.S. 214, 221 (2002); *Stancle v. Clay*, 692 F.3d 948, 956 (9th Cir. 2012); *see also Velasquez v. Kirkland*, 639 F.3d 964, 968 (9th Cir. 2011) (finding that delays of ninety-one days and eighty-one days are "far longer than the Supreme Court's thirty-to-sixty-day benchmark for California's 'reasonable time' requirement," and are, without adequate explanation, unreasonable under California law).

A federal habeas application does not provide a basis for statutory tolling, *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), nor does a state petition filed after the federal limitations period has expired, *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

A petitioner may be entitled to statutory tolling for the time that additional rounds of state habeas petitions are pending (provided they were filed prior to the expiration of the limitations period), although the time between rounds is not tolled. *Cross v. Sisto*, 676 F.3d 1172, 1178-79 (9th Cir. 2012); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). For tolling to be applied

based on a subsequent round, that subsequent set of petitions cannot be untimely or improperly successive. *Porter*, 620 F.3d at 958.

### 1. Equitable Tolling

The limitations period may also be equitably tolled where a habeas petitioner establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631 (2010). Petitioner has the burden of showing facts entitling him to equitable tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). The threshold necessary to trigger equitable tolling is very high, "lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). Equitable tolling may be applied only where a petitioner shows that some external force caused the untimeliness. *Id*.

### 2. The Equitable Exception for Innocence

In addition, the statute of limitations is subject to an actual innocence exception.[1] A petitioner may have her untimely filed case heard on the merits if she can persuade the district court that it is more likely than not that no reasonable juror would have convicted her. *McQuiggin v. Perkins*, __ U.S. __ , 133 S. Ct. 1924, 1928, 1933 (2013); *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 133 S. Ct. at 1935. For example, the "court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability" of his evidence of innocence. *Id*.

**III.   Analysis**

Respondent moves to dismiss the petition on the ground that it is untimely under AEDPA. For the reasons that follow, the undersigned agrees.

---

[1] This exception is also known variably as the "miscarriage of justice" exception and the "*Schlup* gateway," after *Schlup v. Delo*, 513 U.S. 298 (1995), in which the U.S. Supreme Court held that a habeas petitioner whose claims were procedurally barred could nevertheless obtain a determination on the merits of his petition if he made the requisite showing of actual innocence.

### a. Limitations Period Start Date

Respondent argues that the limitations period began to run on April 25, 1996, as petitioner's conviction became final prior to AEDPA's effective date. Petitioner argues that, under 28 U.S.C. § 2244(d)(1)(D), the limitations period should be determined to start sometime in May 2015, when a psychologist hired by her family prepared a declaration opining that petitioner lacked the specific intent necessary to sustain her conviction. ECF No. 14 at 5-11. Specifically, the psychologist declared that

> the psychological effects on Ms. Allen from her use of heroin 30 minutes before the undercover police officers arrived, and her fear and paranoia that men were coming to kill her ex-boyfriend Ron Black and possibly her, put her in fear of imminent harm or death from the undercover officers who broke down her door and entered her residence. Ms. Allen's mental state at the time which included being under the influence of heroin combined with acute paranoia, panic, fear, and confusion resulted in her fear of immediate physical harm or death. . . . I would have testified at Ms. Allen's trial that a person in her specific state of mind at the time of the crime under the circumstances elucidated above, would have been incapable of forming "the intention unlawfully to take away the life of a fellow creature" or could have done so "with awareness of the danger and a conscious disregard for human life," as required to sustain a murder conviction.

*Id.* at 8. This opinion was premised on a review of unidentified "confidential files and documents." *Id.* at 7.

Under § 2244(d)(1)(D), the limitations period begins when the factual predicate of a claim could have been discovered through the exercise of due diligence. *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012). This section provides a later start-date than § 2244(d)(1)(A) "only if vital facts could not have been known by the date the appellate process ended." *Id.* (internal quotation marks omitted). Section 2244(d)(1)(D) concerns only the discovery of *facts* themselves; it does not provide for a later start-date based on the discovery of some fact's legal significance. *Id.*

This last legal reality is fatal to petitioner's argument for the application of § 2244(d)(1)(D) to her case. Petitioner knew the facts on which the psychologist's opinion was based – that she had just taken heroin and was wary that someone may come to the home to kill her ex-boyfriend – at the time of her trial. In fact, her trial counsel tried to elicit similar testimony from a psychologist who testified as a defense witness at trial. Lodg. Doc. No. 2 at 6-8. The trial

court would not allow the testimony, and the appellate court affirmed that ruling because various sections of the state penal code prohibited evidence of voluntary intoxication or mental disorder to negate the intent element of any crime. *Id.* Petitioner's current claim that she did not know that her state of mind at the time of her crimes was a potential defense is thus belied by the record. As petitioner knew the factual predicate of her claims at the time of trial, § 2244(d)(1)(D) has no application here. Moreover, even if the statute were applicable, plaintiff's unexplained decision not to seek habeas relief based on these known facts for 30 years between her direct appeal and her first state habeas cannot be considered diligent. Accordingly, absent tolling, the limitations period for filing this action expired on April 25, 1997.

### b. **Statutory Tolling**

Petitioner's state habeas petitions were filed outside the federal limitations period. State petitions filed after the expiration of the federal limitations period cannot toll the limitations period. *Ferguson*, 321 F.3d at 823. Thus, this case presents no grounds for statutory tolling.

### c. **Equitable Tolling**

Petitioner advances an argument based on state law that her delayed presentation of her habeas claim was justified. While the state authorities relied on by petitioner have no application in this federal habeas action, the argument can be construed as a request that the court equitably toll the limitations period. Petitioner's justifications for her delay are: (1) her lack of legal training and knowledge and (2) her appellate lawyer's statement to her that she had no further legal remedies other than a petition for executive clemency. ECF No. 14 at 10.

Petitioner's first justification falls short of the extraordinary circumstances required to apply equitable tolling: "a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling." *Waldron-Ramsey*, 556 F.3d at 1013 n.4 (citing *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)).

The second justification falls short as well. Attorney conduct that is "egregious" and amounts to more than "excusable neglect" can constitute an "extraordinary circumstance" justifying equitable tolling. *Holland*, 560 U.S. at 651-52. However, even if the court were to agree with petitioner here that her attorney's opinion regarding viable avenues of further review

6

was an extraordinary circumstance, petitioner must also show that she has been pursuing her rights diligently. Petitioner provides no explanation for the time-gap between her conviction and her family's decision in 2014 to revisit her case. Again, this absence of explanation makes a finding that petitioner has been pursuing her rights diligently impossible, and the court should therefore decline to equitably toll the limitations period.

### d. The Equitable Exception for Innocence

Lastly, petitioner argues that the court should apply the equitable exception to AEDPA's limitations period for actual innocence. Petitioner's showing falls short of the high bar needed to apply the exception. As noted above, the *Schlup* exception may be applied only where the petitioner makes a showing sufficient to convince the court that it is more likely than not that no reasonable juror would have convicted her in light of new evidence. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. at 1935. Petitioner argues that the psychologist's declaration shows that she is actually innocent of first-degree murder. The undersigned agrees with respondent, however, that the declaration offers, at best, competing evidence regarding her mental state to that presented at trial. It does not call the conviction fundamentally into question. Additionally, the lengthy delay between the trial and the psychologist's declaration (which is based on unidentified documentary material rather than any examination of petitioner near the time of the crime) decreases its value to the court in determining whether petitioner has made the requisite showing of innocence. *McQuiggin*, 133 S. Ct. at 1936 (holding that delay in the presentation of evidence of innocence may undermine the credibility of the innocence claim). In sum, petitioner has not shown that the declaration is evidence such that, if it were considered with all the other evidence presented at trial, it is probable that no reasonable jury would have found her guilty. *See Sistrunk v. Armenakis*, 292 F.3d 669, 674-75 (9th Cir. 2002).

/////
/////
/////
/////
/////

## IV.     Recommendation

As the petition is untimely, and petitioner has not presented facts that would justify tolling the limitations period or applying an exception thereto, it is RECOMMENDED that respondent's July 12, 2016 motion to dismiss (ECF No. 11) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: February 7, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE